## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In Re Detention of J. F. | ) | No. 75877-2-I |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| J. F. | ) | |
| | ) | |
| Appellant. | ) | FILED: September 18, 2017 |

SPEARMAN, J. — An individual may be detained for 14 days of involuntary treatment if he presents a substantial risk of physical harm to another by an overt act causing a reasonable apprehension of dangerousness. Here, J.F.'s mother observed his mental health deteriorating over the course of a couple of weeks, until one night J.F. repeatedly threatened to hurt her. Fearing for her safety, she blocked her bedroom door. Substantial evidence supports the trial court's finding that J.F. presented a substantial risk of physical harm. The trial court did not err when it ordered J.F. detained for 14 days of involuntary treatment. We affirm.

## FACTS

Twenty-eight year old J.F. lived with his mother, B.F. For a couple of weeks, J.F. had been up in the middle of the night talking to himself, going in and out of the apartment, and yelling outside. B.F. was concerned because her son had a diagnosed mental illness and refused to take his prescribed medication.

J.F. had also taken a swing at her in the past. She began blocking her bedroom door with a chair at night.

On the afternoon of September 4, 2016, B.F. and J.F. had a heated discussion about leftovers. J.F. said "fuck you" and B.F. went to her bedroom. She left her bedroom briefly around 7:00 p.m. and saw that J.F. was agitated. Verbatim Report of Proceedings (VRP) at 11. She returned to her room, blocking the door with a chair. She awoke at 1:00 a.m. to the sound of the television on high volume. She heard J.F. speaking loudly to himself and going in and out of the apartment. When he was outside, J.F. yelled and cursed. B.F. stayed in her room and called J.F.'s name a couple of times. J.F. began coming up to his mother's door, saying, "'I'm going to whip your ass.'" VRP at 15. He demanded his mother's car keys. He said that he was the police and that no one could kill him. He said again that he would whip her ass. He said that she needed to go outside, and that "'any bitch on the street would whip [her] ass.'" Id.

J.F. continued with similar statements and B.F. started to "tune it out." Id. J.F. never banged on her door or attempted to enter the room. Nevertheless concerned, B.F. called the phone number for a designated mental health provider, who advised her to call the police. She was afraid to go into the living room with J.F. to let in the police officers, so she threw her keys out of her bedroom window and they let themselves in. J.F was detained and transported to Valley Medical Center.

The State petitioned to detain J.F. for 14 days of involuntary treatment, alleging that he presented a likelihood of serious harm to others. At the

2

detainment hearing on September 8, J.F. waived his presence. The State presented two witnesses: B.F. and Dr. Richard Thomas, who evaluated J.F. when he was admitted to the hospital. Dr. Thomas opined that J.F. had a mental disorder characterized as unspecified psychosis. He also testified that J.F. experienced auditory hallucinations, was paranoid, and had delusions. J.F. was guarded in his interactions with staff and had minimal insight into his behavior.

The trial court found that J.F.'s behavior placed his mother in reasonable fear of harm and concluded that due to his mental disorder J.F. presented a substantial risk of serious harm to others. The court ordered J.F. detained for 14 days of involuntary treatment. J.F. appeals.

## DISCUSSION

J.F. argues that the trial court erred in ordering him detained for involuntary treatment. He contends that there is not substantial evidence to support the conclusion that he presented a substantial risk of physical harm to others as required by statute.

We review whether substantial evidence supports the findings and, if so, whether the findings in turn support the trial court's conclusions of law. In re LaBelle, 107 Wn.2d 196, 209, 728 P.2d 138 (1986).

When petitioning for an individual's detention for 14 days of involuntary treatment, the State must prove by a preponderance of the evidence that such person, as a result of mental disorder, presents a likelihood of serious harm, or is gravely disabled. RCW 71.05.240. Here, the State alleges that J.F. presented a likelihood of serious harm, which is defined as,

3

(a) A substantial risk that: (i) Physical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself; *(ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm*; or (iii) physical harm will be inflicted by a person upon the property of others, as evidenced by behavior which has caused substantial loss or damage to the property of others; or

(b) The person has threatened the physical safety of another and has a history of one or more violent acts; . . .

(Emphasis added). RCW 71.05.020(27). Detainment under this subsection requires "a showing of a substantial risk of physical harm as evidenced by a recent overt act. This act may be one which has caused harm or creates a reasonable apprehension of dangerousness." In re Harris, 98 Wn.2d 276, 284-85, 654 P.2d 109 (1982). While the overt act must be recent, imminent danger is not required as a condition of involuntary detainment. Id. at 282.

In ordering J.F. detained, the trial court found that,

due to the Respondent's mental disorder, he presents as a substantial risk of physical Harm to Others based on: (1) B.F.'s testimony that she barricaded herself in her room to prevent harm from the Respondent, (2) B.F.'s testimony that the Respondent was yelling and screaming threatening statements to her; (3) B.F.'s testimony that she was fearful for her safety around the Respondent; and (4) Dr. Thomas' testimony that the Respondent's [sic] remains symptomatic in the hospital with a labile mood.

Clerk's Papers at 55.

J.F. argues that the State did not prove that he engaged in a "recent overt act" showing his substantial risk of harm to another. We disagree. B.F. testified that J.F. came up to her door and repeatedly threatened to "whip her ass." During this time period, B.F. observed that J.F. was increasingly agitated and would yell

4

and cuss at night in and out of the apartment. This is substantial evidence of a recent overt act demonstrating substantial risk of physical harm.

J.F. next argues that the State failed to prove his dangerousness. Dangerousness may be proved by a recent overt act that "caused harm or creates a reasonable apprehension of dangerousness." In re Harris at 284. J.F.'s threats toward his mother caused her to barricade herself inside her bedroom. Fearing that J.F. would follow through on his threats, she was afraid to be in the same room as J.F. for the time period it would take to open the door for police. There is substantial evidence that J.F.'s acts created a reasonable apprehension of dangerousness.

Affirmed.

WE CONCUR:

Spearman, J.

Cox, J.